**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

DEAN N. EISENBERGER, SR. and
THERESA EISENBERGER,

  Plaintiffs,

   v.

CHESAPEAKE APPALACHIA, LLC and
STATOILHYDRO USA ONSHORE
PROPERTIES, INC.,

  Defendants.

NO. 3:09-CV-1415

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendants' motion to compel arbitration. (Doc. 8.) For the reasons discussed more fully below, this Court will deny the Defendants' motion to compel arbitration.

## BACKGROUND

The facts as alleged in Plaintiff's Complaint are as follows.

Plaintiffs are the owners of a parcel of land comprising approximately 58.1 acres in Windham Township, Wyoming County, Pennsylvania, which is believed to be located over a "subsurface geologic formation" containing natural gas known as the Marcellus Shale. (Compl. ¶ 4-5.) Plaintiffs received an unsolicited communication from Premier Land Services, LLC ("Premier"), which is a leasing agent for Defendant Chesapeake Appalachia, LLC ("Chesapeake"). (*Id.* at ¶ 7.)

On February 22, 2008, Plaintiffs notified premier of their desire to negotiate a lease with Chesapeake. (*Id.* at ¶ 8.) On March 3, 2008, Premier forwarded an unsigned document entitled "Paid Up Oil and Gas Lease" ("the Lease") that listed Chesapeake as the lessee and

Mr. Eisenberger as the lessor of the Property; Mr. Eisenberger's wife, Plaintiff Theresa Eisenberger, was not listed on the lease. (*Id.* at ¶ 10.) Mr. Eisenberger signed the lease and returned it to Premier on or about March 10, 2008. (*Id*. at ¶ 12.)

On March 28, 2008, Ms. Eisenberger reviewed the Lease, noticed that it incorrectly identified her husband as a single man and did not list her as a co-owner of the property; Mr. Eisenberger then contacted Premier to alert them to the situation. (*Id.* at ¶¶ 13-15.) On March 29, 2009, Mr. Eisenberger sent a letter to Premier via mail and fax advising Premier to "void all current paperwork and forward me a revised and updated agreement for review." (*Id.* at ¶ 16.) Later that day, Mr. Eisenberger received a telephone call from a Premier employee acknowledging receipt of the letter sent by Plaintiffs and stating that the matter would be forwarded to the Premier's main office. (*Id.* at ¶ 17.) On April 8, 2008, John Corcoran, who identified himself as the president of Premier, contacted Mr. Eisenberger and explained that he would contact Chesapeake's legal department, who would in turn respond to Plaintiff's letter. (*Id.* at ¶ 18.) On April 17, 2008, Corcoran called Mr. Eisenberger, explained that Chesapeake's position was that the Lease "was still good" and offered an increase in the bonus contemplated in the Lease. (*Id*. at ¶ 19.)

On May 12, 2008, Plaintiffs sent a letter via certified mail entitled "Revocation of Initial Lease Offer," notifying Premier that Plaintiffs were revoking the offer and demanding the return of all documents. (*Id.* at ¶ 22.) On June 20, 2008, Mr. Eisenberger received a copy of the Lease and a bank note from Premier in the amount of twenty-nine thousand, fifty dollars ($29,050.00), which represented the Bonus Consideration and money for "delay rental" under the Lease; Plaintiffs have not cashed this note. (*Id.* at ¶ 23.) On August 18, 2008, the

lease was recorded in the chain of title by the Wyoming County Recorder of Deeds. (*Id.* at ¶ 24.)

Plaintiffs filed a Complaint in the Court of Common Pleas of Wyoming County on June 17, 2009. In that Complaint, Plaintiff sought a declaratory judgment finding that the lease signed by Mr. Eisenberger was an offer, not a valid and enforceable contract, which was revoked by Plaintiffs on March 28, 2008 (Count I). Plaintiffs also brought a claim to quiet title on the property (Count II). The case was removed to this Court by joint notice on July 21, 2009. (Doc. 1.) On December 7, 2009, Defendants filed the instant motion to compel arbitration. (Doc. 8.) This motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Under Pennsylvania law, parties must submit their claims to arbitration if: (1) the parties entered into an agreement to arbitrate and (2) the dispute falls within the scope of the agreement. *Messa v. State Farm Ins. Co.*, 641 A.2d 1167, 1168 (Pa. Super. 1994). Motions to compel arbitration are governed under the summary judgment standard set forth in FED. R. CIV. P. 56(c). *InterDigital Commc'ns Corp. v. Fed. Ins. Co.*, 392 F. Supp. 2d 707, 711 (E.D. Pa. 2005). Summary judgment is appropriate where the moving party establishes that "there is no genuine issues as to any material fact and that [it is] entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

In considering a motion to compel arbitration, the Court must consider all of the non-moving party's evidence and construe all reasonable inferences in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Versage v. Twp. of Clinton N.J.*, 984 F.2d 1359, 1361 (3d Cir. 1993). The

3

Court's function is not to weigh evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

## DISCUSSION

Federal law generally preempts state law on issues of arbitrability; however, state law is usually adopted in diversity cases. *H.L. Libby Corp. v. Skelly and Loy, Inc.*, 910 F. Supp. 195, 197 (M.D. Pa. 1995). Therefore, in diversity cases, federal law will govern for cases involving contract provisions that affect interstate commerce, and state law will govern in contracts that do not affect interstate commerce. *Id.* In cases involving oil and gas leases for property only in the state of Pennsylvania, this Court applies the law of Pennsylvania. *Ulmer v. Chesapeake Appalachia, LLC*, No: 4:08-cv-2062, slip op. at 2 (M.D. Pa. Jan. 16, 2009). Thus, this Court will apply Pennsylvania law in this case, as it involves a gas and oil lease for a property located entirely in Pennsylvania. Nevertheless, the Third Circuit Court of Appeals has used federal case law and Pennsylvania case law interchangeably on the issue of arbitration because they have "evolved essentially in unison." *PainWebber, Inc. v. Hartmann*, 921 F.2d 507, 510 n.3 (3d Cir. 1990).

In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), the Supreme Court was tasked with deciding whether a court or an arbitrator should rule on a claim that a contract containing an arbitration provision is void for illegality. In *Buckeye*, the plaintiff-respondents entered into contracts with the defendant-petitioners in which the plaintiffs received cash in exchange for a personal check in the amount of the cash plus a finance charge; each of these transactions included an arbitration provision. 546 U.S. at 442-43. Plaintiffs then brought a putative class action in Florida state court, alleging that the

agreements violated Florida lending laws, thereby making the agreement criminal on its face; the defendants moved to compel arbitration of the agreement. *Id.* at 443.

The Court stated that challenges to the validity of arbitration agreements can be divided into two types: 1) challenges that specifically target the validity of the agreement to arbitrate, and 2) challenges that attack the contract as a whole. *Id.* at 444. The Supreme Court reversed the Florida Supreme Court and held that challenges to the arbitration clause can be decided by the courts, but that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 449. Justice Scalia, writing for the Court, did carve out an exception to this seemingly sweeping holding noting:

> The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents (and by the Florida Supreme Court), which hold that it is for courts to decide whether the alleged obligor ever signed the contract, . . . whether the signor lacked authority to commit the alleged principal, . . . and whether the signor lacked the mental capacity to assent.

*Id.* at 444 n.1 (internal citations omitted).

Defendants also point to two recent decisions of this Court in support of their motion. In *Ulmer v. Chesapeake Appalachia, LLC*, No: 4:08-cv-2062, slip op. (M.D. Pa. Jan. 16, 2009), the plaintiff sought a declaratory judgment seeking that the oil and gas lease be declared void because it violated Pennsylvania's minimum royalty rate. Defendants were seeking to compel arbitration. *Id.* at 1. This Court held that such a challenge attacks the contract as a whole, and, therefore, must be brought before an arbitrator, as per *Buckeye* and a long line of Pennsylvania case law. *Id.* at 7. The *Ulmer* holding relied on cases that held that challenges to contracts based on defenses such as fraud, duress and

5

unconscionability go to the contract as a whole and are subject to arbitration. *See id.* at 6-7. The Court, therefore, could "conceive of no justification . . . for distinguishing between challenges to a contract as a whole on the grounds of illegality on the one hand and all other grounds, such as fraud, duress, or unconscionability on the other." *Id.* at 7.

In *Hayes v. Chesapeake Appalachia, LLC*, No 3:09-cv-619, slip op. (M.D. Pa. May 15, 2009), the Plaintiffs sought to have this Court declare the lease at issue void because "the statutorily mandated one-eight (1/8) royalty payment for gas recovered from [plaintiffs'] property . . . should not be subject to deduction of post-production costs." *Id.* at 1. The defendant moved to compel arbitration. *Id.* at 1-2. The Court found not basis to distinguish *Hayes* from *Ulmer*, and granted the defendant's motion to compel arbitration on that basis.

The instant case is distinguishable from *Ulmer* and *Hayes* and fits into the area left uncovered by the Supreme Court's holding in *Buckeye*. This case does not meet the first prong of the arbitration test under Pennsylvania law, namely that there be an agreement between the parties to arbitrate.

*Buckeye* is inapposite in this instance because this case concerns the area of law left open by the footnote quoted above. The Supreme Court explicitly declined to decide the question of whether claims that a contract was ever formed at all should be decided by a court or an arbitrator. Plaintiffs are arguing that there was never an agreement reached because their offer was revoked before Defendants could accept. Therefore, the holding in *Buckeye* does not reach the issue considered in this case, and cannot be relied on for the proposition that the case at bar must be decided by an arbitrator.

This case is also easily distinguishable from *Ulmer* and *Hayes*. In those cases, the

6

plaintiffs sought to have an otherwise valid and enforceable contract voided based on a contract defense. In this case, the Plaintiffs are seeking a declaration that a contract never existed in the first place because there was no offer and acceptance between the parties. Unlike *Ulmer*, this Court *can* see a reason to distinguish between claims of illegality, fraud, duress, and unconscionability on the one hand, and claims that there was never an offer and acceptance on the other. In the former, there was a meeting of the minds between the parties on at least some provisions in the contract, including the arbitration agreement, and therefore it is reasonable for both parties to have anticipated submission to arbitration. In the latter, there was no agreement regarding any of the provisions of the contract and it would be unfair to force a party into an arbitration that was never agreed to, thereby denying them access to the courts.

To be clear, this decision does not serve a *de facto* declaratory judgment that there was not an offer and acceptance in the instant matter. This Court is not determining the truth or falsity of Plaintiffs' claims. However, the issues and matters of fact to be decided in the underlying case are not ones that should be brought before an arbitrator. When viewed in the light most favorable to the non-moving party, as the standard for a motion to compel requires, there is a genuine issue of material fact regarding whether an arbitration agreement was ever entered into; in fact, there is a genuine issue of material fact regarding whether a contract was ever formed at all. As such, it would be inappropriate to grant Defendants' motion to compel arbitration and deny Plaintiffs' access to the court, based on an arbitration agreement that they may or may not have agreed to.

## CONCLUSION

For the reasons stated above, the Court will deny Defendants' motion to compel

7

arbitration. An appropriate Order follows.

February 4, 2010                                          /s/ A. Richard Caputo
                                                          A. Richard Caputo
                                                          United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEAN N. EISENBERGER, SR. and
THERESA EISENBERGER,

     Plaintiffs,

        v.

CHESAPEAKE APPALACHIA, LLC and
STATOILHYDRO USA ONSHORE
PROPERTIES, INC.,

     Defendants.

NO. 3:09-CV-1415

(JUDGE CAPUTO)

## ORDER

    **NOW**, this 4th day of February, 2010, **IT IS HEREBY ORDERED** that

Defendants' motion to compel arbitration (Doc. 8) is **DENIED**.


                    /s/ A. Richard Caputo
                    A. Richard Caputo
                    United States District Judge