# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEAN N. EISENBERGER, SR. and THERESA EISENBERGER, | |
| Plaintiffs, | NO. 3:09-CV-1415 |
| v. | (JUDGE CAPUTO) |
| CHESAPEAKE APPALACHIA, LLC and STATOILHYDRO USA ONSHORE PROPERTIES, INC., | |
| Defendants. | |

## MEMORANDUM

Presently before the Court is Defendants' Motion to Stay and Renewed Motion to Compel Arbitration or in the Alternative Certify Order for Interlocutory Appeal. (Doc. 17) For the reasons discussed more fully below, this Court will deny in part and grant in part the Defendants' motion.

## BACKGROUND

The facts as alleged in Plaintiff's Complaint are as follows. Plaintiffs are the owners of a parcel of land comprising approximately 58.1 acres in Windham Township, Wyoming County, Pennsylvania, which is believed to be located over a "subsurface geologic formation" containing natural gas known as the Marcellus Shale. (Compl. ¶ 4-5.) Plaintiffs received an unsolicited communication from Premier Land Services, LLC ("Premier"), which is a leasing agent for Defendant Chesapeake Appalachia, LLC ("Chesapeake"). (*Id.* at ¶ 7.)

On February 22, 2008, Plaintiffs notified premier of their desire to negotiate a lease with Chesapeake. (*Id.* at ¶ 8.) On March 3, 2008, Premier forwarded an unsigned document entitled "Paid Up Oil and Gas Lease" ("the Lease") that listed Chesapeake as the lessee and

Mr. Eisenberger as the lessor of the Property; Mr. Eisenberger's wife, Plaintiff Theresa Eisenberger, was not listed on the lease. (*Id.* at ¶ 10.) Mr. Eisenberger signed the lease and returned it to Premier on or about March 10, 2008. (*Id*. at ¶ 12.)

On March 28, 2008, Ms. Eisenberger reviewed the Lease, noticed that it incorrectly identified her husband as a single man and did not list her as a co-owner of the property; Mr. Eisenberger then contacted Premier to alert them to the situation. (*Id.* at ¶¶ 13-15.) On March 29, 2009, Mr. Eisenberger sent a letter to Premier via mail and fax advising Premier to "void all current paperwork and forward me a revised and updated agreement for review." (*Id.* at ¶ 16.) Later that day, Mr. Eisenberger received a telephone call from a Premier employee acknowledging receipt of the letter sent by Plaintiffs and stating that the matter would be forwarded to the Premier's main office. (*Id.* at ¶ 17.) On April 8, 2008, John Corcoran, who identified himself as the president of Premier, contacted Mr. Eisenberger and explained that he would contact Chesapeake's legal department, who would in turn respond to Plaintiff's letter. (*Id.* at ¶ 18.) On April 17, 2008, Corcoran called Mr. Eisenberger, explained that Chesapeake's position was that the Lease "was still good" and offered an increase in the bonus contemplated in the Lease. (*Id*. at ¶ 19.)

On May 12, 2008, Plaintiffs sent a letter via certified mail entitled "Revocation of Initial Lease Offer," notifying Premier that Plaintiffs were revoking the offer and demanding the return of all documents. (*Id.* at ¶ 22.) On June 20, 2008, Mr. Eisenberger received a copy of the Lease and a bank note from Premier in the amount of twenty-nine thousand, fifty dollars ($29,050.00), which represented the Bonus Consideration and money for "delay rental" under the Lease; Plaintiffs have not cashed this note. (*Id.* at ¶ 23.) On August 18, 2008, the

2

lease was recorded in the chain of title by the Wyoming County Recorder of Deeds. (*Id.* at ¶ 24.)

Plaintiffs filed a Complaint in the Court of Common Pleas of Wyoming County on June 17, 2009. In that Complaint, Plaintiff sought a declaratory judgment finding that the lease signed by Mr. Eisenberger was an offer, not a valid and enforceable contract, which was revoked by Plaintiffs on March 28, 2008 (Count I). Plaintiffs also brought a claim to quiet title on the property (Count II). The case was removed to this Court by joint notice on July 21, 2009. (Doc. 1.) On December 7, 2009, Defendants filed a motion to compel arbitration. (Doc. 8.) On February 4, 2010, this Court issued a Memorandum and Order denying Defendants' Motion to Compel Arbitration. (Doc. 16.)

Defendants filed the instant motion on March 29, 2010, arguing that 1) this Court should stay the proceedings in the case at bar because the Supreme Court is likely to imminently issue a ruling on *Granite Rock v. Int'l Brotherhood of Teamsters* that will affect the outcome of this case, 2) "renew" its motion to compel arbitration because the Federal Arbitration Act ("FAA") should apply to the instant case, and 3) seeking an interlocutory appeal of the February 4, 2010 Order to the Third Circuit Court of Appeals. This motion has been fully briefed and is currently ripe for disposition.

**DISCUSSION**

**1.      Stay Pending the Supreme Court's Ruling in *Granite Rock***

The Supreme Court heard oral argument on the case of *Granite Rock v. Int'l Brotherhood of Teamsters* on January 19, 2010. (Doc. 17, Ex. C.) A reading of the transcript makes it clear that the issue of contract formation was not before the Supreme Court in that

3

case and that both parties agreed that a valid contract had been formed. *See Granite Rock Co. v. Int'l Brotherhood of Teamsters*, No. 08-1214, 2010 WL 1716664, at *13-15 (Jan. 19, 2010).[1]

In this Court's February 4, 2010 Order, the main issue regarding whether or not the case would be subject to arbitration was contract formation. The fact that Plaintiffs allege that there was never a contract formed is precisely why the Motion to Compel Arbitration was denied. The case before the Supreme Court will not resolve the issue regarding the proper forum for cases revolving around contract formation because both parties in *Granite Rock*

---

[1] JUSTICE BREYER: Yes, but there is no doubt about the formation, just as Justice Sotomayor said. There is a contract, the contract that was signed on December 17th. It is formed. You don't doubt that it's formed. They don't doubt that it's formed. And that contract has an arbitration agreement in it. And one of the questions that will be arbitrated, I take it, is *14 whether that December 17th contract, because of its retroactivity provisions, provides damages for what happened in July. And part of that will require the arbitrator to interpret the December 17th contract --

MR. MATHIASON: Your Honor --

JUSTICE BREYER: -- to decide whether it does cover that event of July 2nd. Now, what -- what has this got to do -- I would have thought -- is that -- I mean, what is your argument?

MR. MATHIASON: Your Honor, the critical issue isn't the NLRB ruling, although that is going to have to be drawn upon. There is a denial that a contract was formed on July 2nd that continues to today. And the question is: Where does that get decided? Does it get decided in a court, as we did before with a unanimous jury verdict? Or does that now get vacated and sent to an arbitrator with no agreement --

JUSTICE GINSBURG: But why is there -- is there anything, any question about formation, given that there is a contract? The contract is retroactive to May, so if the contract is retroactive to May then certainly a contract was formed and that issue is -- is academic.

MR. MATHIASON: You're -- Justice Ginsburg, this is right at the center of the analysis, in that we *15 contend, the company, that there was a formation on July 2nd. The other side contends that something happened on August 22nd that would constitute the formation event. There was no -- if our contract --

JUSTICE GINSBURG: But why does it matter? Why does it matter if we have a contract? A contract has been formed; everybody agrees about that. And everybody agrees that the effective date is May.

4

have accepted that a valid contract was, in fact, formed. As such, it would be inappropriate to stay the proceedings in the case at bar to wait for the disposition of a case that will likely not have an affect on the controlling issue of law in the instant matter. Defendants' motion for a stay will be denied.

**2.      "Renewed" Motion to Compel Arbitrartion**

Defendants argue that the FAA should apply to the instant case, and that this Court should grant its renewed motion to compel arbitration on that basis. However, this Court already decided that issue by following precedent in this district. In the February 4, 2010 Memorandum and Order this Court clearly stated:

> Federal law generally preempts state law on issues of arbitrability; however, state law is usually adopted in diversity cases. *H.L. Libby Corp. v. Skelly and Loy, Inc.*, 910 F. Supp. 195, 197 (M.D. Pa. 1995). Therefore, in diversity cases, federal law will govern for cases involving contract provisions that affect interstate commerce, and state law will govern in contracts that do not affect interstate commerce. *Id.* In cases involving oil and gas leases for property only in the state of Pennsylvania, this Court applies the law of Pennsylvania. *Ulmer v. Chesapeake Appalachia, LLC*, No: 4:08-cv-2062, slip op. at 2 (M.D. Pa. Jan. 16, 2009). Thus, this Court will apply Pennsylvania law in this case, as it involves a gas and oil lease for a property located entirely in Pennsylvania. Nevertheless, the Third Circuit Court of Appeals has used federal case law and Pennsylvania case law interchangeably on the issue of arbitration because they have "evolved essentially in unison." *PainWebber, Inc. v. Hartmann*, 921 F.2d 507, 510 n.3 (3d Cir. 1990).

(Doc. 16 at 4.)

This Court was clear in its previous opinion that Pennsylvania law would govern the case because the entire property was located in Pennsylvania. Defendants have pointed to

5

nothing that would cause this Court to reverse its position.[2] Thus, Defendants' renewed motion to compel arbitration will be denied.

## 3. Interlocutory Appeal

Defendants seeks to appeal the issue of whether the arbitration provided for in a document which the Defendants say is a contract between them and Plaintiffs, but Plaintiffs claim is not a contract, is the proper forum to determine the issue of contract formation, rather than federal court. Pursuant to 28 U.S.C. § 1292(b), a district judge may certify an order for immediate appeal if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The decision to certify an order for immediate appeal lies within the sound discretion of the trial court. *Orson v. Miramax Film Corp.*, 867 F. Supp. 319, 320 (E.D. Pa. 1994) (citing *Delaware Valley Toxics Coalition v. Kurz-Hastings, Inc.*, 813 F. Supp. 1132, 1142 (E.D. Pa. 1993)). The burden is on the movant to demonstrate that a § 1292(b) appeal is warranted. *Id.* (citing *Rottmund v. Continental Assurance Co.*, 813 F. Supp. 1104, 1112 (E.D. Pa. 1992)). The district court should certify an order for immediate appeal only if all three requirements set forth in § 1292(b) are met. *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974), *cert. denied*, 419 U.S. 885 (1974); *Orson*, 867 F. Supp. at 321 (citing *Piazza v. Major League Baseball*, 836 F. Supp. 269, 271 (E.D. Pa. 1993)). Further, a court should exercise its discretion mindful of the strong policy against piecemeal appeals. *Link v. Mercedes-Benz*

---

[2] Furthermore, it is questionable whether a "renewed" motion is acceptable under the Federal Rules of Civil Procedure. If Defendants wanted to challenge this Court's previous decision that Pennsylvania law should be applied rather than the FAA, the proper vehicle would have been a motion for reconsideration pursuant to Fed. R. Civ. P. 59(e).

*of N. Am.*, 550 F.2d 860, 863 (3d Cir. 1977), *cert. denied*, 431 U.S. 933 (1977).

A question of law is controlling if 1) an incorrect disposition would constitute reversible error and 2) it is serious to the conduct of the litigation, either practically or legal. *Katz*, 496 F.2d at 747. Clearly, an incorrect disposition about the appropriate forum for a case such as this would constitute reversible error. Furthermore, from a practical standpoint, the conduct of the litigation will be significantly different if the case is before an arbitrator rather than subject to the long and costly process of civil litigation in a federal district court. As such, Defendants satisfy the first prong.

There is also ground for difference of opinion because the controlling issue in this case was left open by the Supreme Court in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). This Court's February 4, 2010, was based primarily on a footnote in that opinion that stated that:

> The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents (and by the Florida Supreme Court), which hold that it is for courts to decide whether the alleged obligor ever signed the contract, . . . whether the signor lacked authority to commit the alleged principal, . . . and whether the signor lacked the mental capacity to assent.

*Id.* at 444 n.1 (internal citations omitted).

As that footnote demonstrates, the Supreme Court's opinion in *Buckeye* declined to answer the question that was posed to us in the Motion to Compel Arbitration in this case. Neither party has cited any controlling law in the Third Circuit that would resolve the issue. There is certainly substantial difference of opinion regarding the effect of contract formation challenges have on arbitration clauses due to the lack of controlling precedent on this precise issue.

7

Factors determining whether an interlocutory appeal would materially advance the litigation include 1) whether the need for trial would be eliminated, 2) whether trial would be simplified by the elimination of complex issues, and 3) whether discovery could be conducted more expeditiously and less expensively. *Knipe v. SmithKline Beecham*, 583 F. Supp.2d 553, 600 (E.D. Pa. 2008). The first factor is clearly met in this case and overrides any other factor in determining this prong of the test. If the Third Circuit Court of Appeals determines that the arbitration clause is controlling even when the formation of a valid contract is questioned, this case would be sent to an arbitrator and the need for a trial would be obviated because the underlying challenge in this case is to the contract as a whole. *See Buckeye*, 546 U.S. at 449 (holding that "a challenge to the validity of the contract as a whole . . . must go to the arbitrator"). Thus, the third prong is met, and the Defendants' motion for interlocutory appeal will be granted.

## **CONCLUSION**

For the reasons stated above, this Court will deny in part and grant in part the Defendants' Motion to Stay and Renewed Motion to Compel Arbitration or in the Alternative Certify Order for Interlocutory Appeal . An appropriate Order follows.

| | |
|---|---|
| May 5, 2010 <br> Date | /s/ A. Richard Caputo <br> A. Richard Caputo <br> United States District Judge |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEAN N. EISENBERGER, SR. and
THERESA EISENBERGER,

    Plaintiffs,

        v.

CHESAPEAKE APPALACHIA, LLC and
STATOILHYDRO USA ONSHORE
PROPERTIES, INC.,

    Defendants.

NO. 3:09-CV-1415

(JUDGE CAPUTO)

## ORDER

**NOW**, this __5th__ day of May, 2010, **IT IS HEREBY ORDERED** that Defendants' Motion to Stay and Renewed Motion to Compel Arbitration or in the Alternative Certify Order for Interlocutory Appeal (Doc. 17) is **DENIED in part and GRANTED in part** as follows:

    1) Defendants' motion to stay the proceedings pending the Supreme Court's decision in *Granite Rock v. Int'l Brotherhood of Teamsters* in **DENIED.**

    2) Defendants' "renewed" motion to compel arbitration is **DENIED**.

    3) Because I find that the issue of whether the arbitration provided for in a document which the Defendants say is a contract between them and Plaintiffs, but Plaintiffs claim is not a contract, is the proper forum to determine the issue of contract formation, rather than federal court involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, Defendant's motion for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is **GRANTED**, and the February 4, 2010 Order (Doc. 16) denying Defendants' Motion to Compel Arbitration is certified for appeal pursuant to 28 U.S.C. § 1292(b).

                                /s/ A. Richard Caputo
                                A. Richard Caputo
                                United States District Judge